JONES, Justice.
These appeals arise from judgments based on a jury verdict in favor of Plaintiff Norman Hadley against Defendant Warren Finch. We reverse and remand as to 84-644 and dismiss case 84-724.
In 1976, Hadley, represented by Finch, an attorney at law, reached a settlement of claims based on injuries received on his job as a pile driver, and received $142,500.
On October 15, 1976, Finch went with Hadley to First National Bank of Mobile (Bank) to use part of Hadley’s award to purchase a certificate of deposit (“C.D.”). The settlement checks, made payable to “Norman Hadley and his attorney, Warren Finch,” were indorsed; Hadley opened a checking account; and Hadley and Finch purchased an $84,195.85 C.D. payable to “Norman Hadley and Warren Finch, his attorney.” The C.D. was under the joint control of Hadley and Finch and both had to indorse it before it could be redeemed. The interest from the C.D. was deposited directly to Hadley’s checking account, and Hadley received these interest payments through September 1980.
Hadley obtained several loans from the Bank, using the C.D. as collateral. Each time, in Hadley’s presence, Finch signed a Bank-required “Consent by Owner to Pledge and Hypothecation Agreement” form which allowed Hadley to borrow against the C.D. During one of these meetings for executing the paperwork to allow Hadley to use the C.D. as loan collateral, Hadley also signed a hypothecation agreement form which allowed Finch to borrow against the C.D. Hadley contended at trial that he never intended to allow Finch to use the C.D. as collateral for Finch’s loans, but Hadley admitted that it was his signature on the form.
On March 29, 1977, Finch signed a $165,-000 promissory note to the Bank. This debt was secured by the Hadley/Finch C.D., Finch’s savings account, and a separate C.D. in which Hadley had no interest. Hadley signed a hypothecation agreement and Hadley and Finch both indorsed the jointly held C.D. When Finch’s loan became delinquent, the Bank wrote two letters to Hadley (one was sent by certified mail), in confirmation of an earlier conversation with him, informing him that the Bank was going to redeem the collateral and pay off Finch’s note. By certified mail, the Bank finally advised Hadley that the C.D. had been set off to pay Hadley’s and Finch’s delinquent loans. Hadley claims that he did not receive the first two letters and did not know of any of Finch’s dealings with the Bank regarding Hadley’s C.D. until the C.D. had been applied by the Bank to the loans.[1]
*1280 Hadley filed a complaint against Finch and fictitious parties, claiming fraud, conspiracy to defraud, and breach of statutory duty. Hadley subsequently substituted the Bank for one of the fictitious parties. Had-ley also amended the complaint several times alleging, inter alia, fraud, misrepresentation, conspiracy to defraud, and breach of statutory and common law duties on the part of the Bank. At the conclusion of all the evidence, Hadley voluntarily struck all claims except those for conspiracy to defraud, fraud, and misrepresentation as to both Defendants. The Bank’s motion for directed verdict was denied.
The trial court instructed the jury on the claims of fraud, misrepresentation, and conspiracy to defraud. After deliberation, the jury returned two verdicts on separate forms: one against Finch for $750,000; and one against the Bank for $168,000.
At the request of both Defendants, the jury was polled and each juror answered that the verdicts were his or hers. Before the jury was excused, the Bank and Finch objected to the verdicts as inconsistent and illegal. The trial court, however, allowed the verdicts to stand and entered judgments thereon. The Bank’s motions for judgment notwithstanding the verdict or for new trial and to set aside the verdicts and judgments were denied. Finch’s motion for new trial was also denied.
Finch and the Bank appealed and Hadley cross-appealed. This Court ordered, on joint motion of Hadley and the Bank, filed after submission, that the Bank’s appeal of the judgment against it and Hadley’s cross-appeal as to the Bank be dismissed. Additionally, Hadley’s cross-appeal as to Finch is hereby dismissed as untimely filed. A.R. A.P. 2(a)(1).
Of the multiple issues raised in the briefs and oral arguments of the parties, only two merit our review.
Finch argues that Hadley’s claims were barred by the one-year statute of limitations applicable to fraud and misrepresentation actions.[2] Our review of the record of the trial below, however, reveals sufficient evidence to warrant a jury’s finding that Hadley had filed his action within the year following his discovery of the loss of his C.D. to set-off the loans at the Bank.[3]
The second issue strongly insisted upon by Finch is that the verdicts against the Bank for $168,000 and against Finch for $750,000 (returned on separate forms), under the circumstances of this case, are subject to reversal as being inconsistent. Wright v. Rowland, 406 So.2d 830 (Ala.1981). Finch’s argument is predicated on the proposition that separate verdicts, and judgments entered thereon, are void in the context of an action against joint tort-feasors. See Ex parte City of Huntsville, 456 So.2d 72 (Ala.1984); W. Prosser, The Law of Torts, § 52 at 345-48 (5th ed. 1984).
Because the two separate verdicts were general verdicts, and because we find that certain of the claims were submitted to the jury against the Defendants as joint tort-feasors, we have no choice but to reverse the judgment and remand the cause.
84-724 DISMISSED.
84-644 REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, AL-MON, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.

. Hadley’s mental capacity was also the basis for factual dispute at trial. Testimony depicted Hadley both as a man of extremely limited mental capacity who could neither read nor write and who depended on others in the areas of financial judgment, and as a man who, although certainly not a financial genius, understood basic business transactions, such as purchases of cars, houses, and insurance; mortgages and loans; credit card accounts; and the use of checking and savings accounts, and who engaged in transactions involving all of these. *1280 There was also testimony that, until this lawsuit, Hadley had never represented to the Bank’s officer with whom he and Finch dealt that he was unable to read or write.

. See § 6-2-39, Code 1975. This one-year statute of limitations was repealed effective January 9, 1985, and those causes of action governed by it were transferred to the two-year statute, § 6-2-38. Act 85-39, 1985 Ala.Acts (Second Special Session 1984-85). The present case is not affected by these statutory changes.

. See § 6-2-3, Code 1975, which prior to January 9, 1985, allowed a fraud action to be brought within one year after "the discovery ... of the fact constituting the fraud.” Act 85-39 amended § 6-2-3 to extend this "saving clause" from one year to two years. This case is not affected by that amendment either.